HOSNER v BROWN

1. GARNISHMENT—BEFORE JUDGMENT—DEBT ON CONTRACT.

A garnishment prior to judgment must be supported by an affidavit showing the principal defendant to be indebted to the plaintiff in a stated amount on a contract over and above set-offs, and the contract must contain a standard by which damages can be ascertained (GCR 1963, 738.2[1]).

2. GARNISHMENT—BEFORE JUDGMENT—JUSTIFIABLE FEARS.

A plaintiff is not justly apprehensive of loss sufficient to obtain a writ of garnishment before judgment merely because he fears the garnishee may pay money over to one of the other defendants in the same action.

3. GARNISHMENT—TERMINATION—BOND.

A garnishment may be terminated by the principal defendant by filing an approved bond or by the court without bond in exceptional circumstances where such action is in the interests of justice (GCR 1963, 738.14, 738.16).

4. GARNISHMENT—CORPORATE DISSOLUTION.

A plaintiff's prayer that a corporate defendant be dissolved and the proceeds paid to plaintiff does not state a claim upon which garnishment before judgment may be based.

REFERENCES FOR POINTS IN HEADNOTES

[1] 6 Am Jur 2d, Attachment and Garnishment § 333.
[3] 6 Am Jur 2d, Attachment and Garnishment §§ 408, 409, 523 *et seq.*
[4] 6 Am Jur 2d, Attachment and Garnishment § 40 *et seq.*
[5] 56 Am Jur 2d, Motions, Rules, and Orders §§ 35–38.
[6] 47 Am Jur 2d, Judgments §§ 1162–1164, 1172.
[7, 8] 45 Am Jur, Receivers §§ 84, 103, 108.
[8] 45 Am Jur, Receivers § 49.
[9] 56 Am Jur 2d, Motions, Rules, and Orders §§ 10, 16.
[10] 47 Am Jur 2d, Jury §§ 57, 61, 64.
[11] 53 Am Jur, Trial § 11.
[12] 19 Am Jur 2d, Corporations § 1333.
[13] 19 Am Jur 2d, Corporations § 1333.
  42 Am Jur 2d, Injunctions § 31.

5. Judgment—Order—Effective Date.

An order is entered when the order is reduced to writing, signed, and dated by the judge or, in certain circumstances, the clerk of the court (GCR 1963, 521.2, 522.1).

6. Judgment—Default—Motion Pending.

An order of default submitted by plaintiff is properly set aside where a defendant has previously filed a motion for accelerated judgment and the order denying his motion has not been entered (GCR 1963, 108.3[1], 522.1, 522.2).

7. Receivers—Hearing—Evidence.

The appointment of a receiver is a harsh remedy which is only to be utilized after a full hearing and only where strong evidence supports such an appointment.

8. Receivers—Harm—Hearing.

A plaintiff's application for appointment of a receiver for a corporation of which he is an officer and director is properly denied where plaintiff fails to obtain a date for a hearing after being requested to do so by the judge, and the appointment of a receiver would cause irreparable harm to stockholders by causing the acceleration of a large loan.

9. Motions—Failure to Notice—Hearing.

A plaintiff's motion to add a party defendant is properly denied where the plaintiff does not notice the motion for hearing until the day of the trial, over nine months after filing the motion, and where the court had ordered at the pretrial conference that all motions were to be noticed by a specific date.

10. Trial—Jury Trial—Waiver.

A plaintiff's request at the trial date for a jury trial is properly denied where he has previously stated he did not want a jury trial and where his action is one formerly heard in equity and not normally tried before a jury.

11. Trial—Pretrial Summary—Prejudice.

A plaintiff is not prejudiced by the court's failure to prepare and send him a pretrial summary where the judge allows plaintiff to amend his pleadings and call expert witnesses because of the lack of a summary although plaintiff had orally indicated at pretrial that he would not call experts, plaintiff has been responsible for several delays in the pretrial procedures, and plaintiff agreed to advancing the date of pretrial and trial.

12. LIMITATION OF ACTIONS—CORPORATIONS—SUITS BY OFFICERS AND
DIRECTORS.

>    The trial court may properly limit proofs of misconduct of officers
>    and directors of a corporation to a period within two years of
>    the filing of the suit when the suit is brought by an officer and
>    director.

13. INJUNCTION—FUTURE DAMAGES—IMPERILED RIGHTS.

>    The apprehension that misconduct may result will not support an
>    injunction preventing any director or shareholder from enter-
>    ing into a contract with the corporation without 100% share-
>    holder approval where no rights of any party are imperiled by
>    the failure to enjoin.

Appeal from Oakland, Frederick C. Ziem, J.
Submitted Division 2 October 6, 1971, at Lansing.
(Docket Nos. 5518, 5773, 7684.) Decided May 24,
1972. Leave to appeal denied, 388 Mich 758.

Complaint by LeRoy Hosner against Albert F.
Brown and others for damages and other relief.
Judgment for defendants. Plaintiff appeals. Af-
firmed.

*Eliot Charlip,* for plaintiff on appeal.

*O'Brien, O'Brien, Bolle, Gase & Gilleran,* for
defendants on appeal.

Before: QUINN, P. J., and DANHOF and TARGON-
SKI,* JJ.

TARGONSKI, J. Plaintiff in his complaint and on
appeal claims that this is a derivative action by
him for the benefit of Northtown Transit Inc.,
Northtown Transit Mix & Supply Company, Inc.,
Western Aggregate Corporation and Michigan
Concrete Pumping Inc. Appeal No. 5518 is brought
by the plaintiff from the action of the trial court in

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

setting aside garnishments before judgment which were issued on application of the plaintiff at the commencement of the proceeding with the filing of the complaint on March 26, 1968. Appeal No. 5773 is an appeal on leave granted from an order filed July 3, 1968, wherein the trial court denied plaintiff's motion for entry of a default judgment. Appeal No. 7684 is an appeal of right from the judgment of the trial court after a trial on the merits. In addition plaintiff in File No. 6021 made application for leave to appeal which was denied but without prejudice to the right of the plaintiff to include the question of the propriety of the circuit court order of June 26, 1968, setting aside the default of the defendants together with the matters in his Appeal No. 5773.

For the purposes of background information it is important to note that the plaintiff is not only a member of the Board of Directors but also a treasurer of Northtown Transit Mix, Inc., President and Director of Western Aggregate Corporation as well as a Director and Officer in another corporation owned by Northtown Transit Mix, Inc. This background becomes very important in the resolution of certain issues raised by the plaintiff on trial and on appeal.

We have very painstakingly plowed through almost 1500 pages of transcript, on trial and on motions, together with a stack of pleadings upwards of a foot high in an attempt to reconcile the variances between the statements of facts as made by the respective parties. Every single page of testimony was carefully digested along with the opinion and the judgment of the trial court and considered in light of the claims, allegations, charges, aspersions and other statements by the plaintiff in his pleadings, in his briefs and in the

course of trial. Because of the complexities of the problem raised by the various assorted charges and allegations made by the plaintiff, a well organized file and trial would have been difficult enough to digest; a similar case in a state of organized confusion would be considerably more difficult, but the most polite label one can place on the pleadings and records in this cause is disorganized confusion which rendered the fog of obfuscation raised in the process to a point where it was almost impenetrable. Under the circumstances we deem it advisable to commend the trial judge for his patience and his infinite care in sifting through the wheat and the chaff to arrive at a studied and logical analysis and conclusion in this matter. In order to make certain that we minimize the amount of confusion in this record, it is our proposal to dispose of the preliminary issues first and then consider those issues raised by the plaintiff on appeal from the judgment after a trial on the merits.

I. Accordingly, we proceed to a consideration of the first issue raised on the appeal of the plaintiff relative to the question of dismissal of garnishment. From an analysis of the briefs of all parties and the transcript below we believe this question is best framed as:

*"May plaintiff, acting as a derivative shareholder, garnish funds of the corporation, for which he purports to act and against which he claims no damage, in a suit against officers and others claiming damages for fraud and other alleged tortious wrongs?"*

Plaintiff claims that he has a count for damages for breach of contract, but an examination of his complaint fails to disclose any such allegation. In fact, there is no claim of any particular contract

between himself or any one of the individual defendants, nor does he set forth the existence of any contract between himself and the corporate defendants other than his interest as a stockholder.

At the outset of the litigation, plaintiff, in addition to filing his complaint, procured the issuance of writs of garnishment against the corporate accounts of Northtown Transit Mix on behalf of which he purported to be acting; he also filed a motion to restrain creditors from proceeding against the corporation, but said motion was never brought on for hearing although served upon the suppliers of the corporation; and he also attempted to procure an *ex parte* appointment of a receiver and upon denial of that application made further attempt to have a receiver appointed during the pendency of the litigation on the basis of the allegations of fraud made in his complaint which were ultimately found to be untrue by the trial court.

The defendant corporations moved that the garnishments as filed be dismissed on the basis that: (1) there was no contract action in litigation, (2) no cause of action was shown against the corporation itself whose bank accounts had been garnisheed, and (3) the affidavit for garnishment before judgment was insufficient in several respects. Plaintiff apparently relies for support of his position upon GCR 1963, 738.14, 738.15 and 738.16. He further maintains that his complaint meets the requirements of § 4011 of the Revised Judicature Act of 1961, MCLA 600.4011; MSA 27A.4011 which specifies that to sustain a garnishment prior to judgment a claim must be "evidenced by contract".

On this issue the respective positions of plaintiff and defendants raise the following questions which

are discussed in turn for purposes of holding the length of this opinion to an irreducible minimum.

(A) *Does the complaint of the plaintiff make a claim upon any one of these defendants "evidenced by contract"?*

For a determination of this issue we turn to the Revised Judicature Act, being 1961 PA 236, § 4011(1); MCLA 600.4011(1); MSA 27A.4011(1), which states in part that:

"The circuit courts of the state shall have power by garnishment to apply to the satisfaction of a claim evidenced by contract."

The statute then goes on to describe assets which can be garnisheed.

The previous statute, MCLA 628.1; MSA 27.1855, provided: "In all personal actions arising upon contract * * * ". The language of the previous statute was similar to that presently contained in GCR 1963, 738.2(1). That language required, and now requires that the affidavits state that "the principal defendant is indebted to the plaintiff in a stated amount upon a contract or judgment over and above set-offs". This position was affirmed by the Supreme Court in *Talbert v Solventol Chemical Products, Inc,* 304 Mich 557 (1943) to the end that in order to sustain a garnishment, the contract upon which an action is brought must contain a standard of reference by which damages can be ascertained.

"Proceeding in garnishment is special and statutory, affording a harsh remedy, and one pursuing it must bring himself within the statute and follow its mandates". *Carr v National Discount Corp,* 320 Mich 192 (1948) and cases therein cited.

The *Carr* case, *supra,* is interesting in that it is a suit to recover a certain sum of money allegedly obtained through a wrongful conspiracy by the defendants. The Court held that the declaration set forth facts which established a basis for a tort action rather than a contract action and that therefore garnishment was not available to the plaintiff. Other than this, the cases cited indicate that strict compliance by the plaintiff is necessary to maintain his remedy.

The complaint in this cause is somewhat similar to that in the *Carr* case, *supra,* in that plaintiff alleges that he has been wronged by one of the individual defendants in the action, not one of the defendants moving for dismissal of garnishment, however; and that the acts of the defendant, as alleged, are tortious in nature as in the case cited.

On the basis of an examination of the plaintiff's complaint which reveals no allegation of a cause of action evidenced by contract and upon the authority cited and for the reasons stated this first question on the first issue must be answered in the negative.

(B) *Is the affidavit upon which the writs of garnishment are based truthful and factual in its allegation that such claim, "evidenced by contract", is made against these defendants and that the plaintiff is apprehensive of loss for the reason given therein?*

The provisions of GCR 1963, 738.2(1), 738.2(3) requiring an affidavit are prerequisites to the issuance of a writ of garnishment. It is self-evident that if such affidavit defaults, either by error or a product of perjury then the writ of garnishment which is based upon such affidavit must fail.

The complaint does not set forth the requisite facts and allegations to support the sworn statement of the plaintiff that the suit is brought upon an "express and implied" contract. Further, an examination of plaintiff's alleged "just apprehension of loss" indicates that he is fearful "that the garnishee may pay said sums over to one or more of the defendants in breach of the contract". Granting the most imaginative application and consideration to the allegations in the plaintiff's complaint and his sworn statement, we can find no cause for him to be "justly apprehensive of the loss of his claim" as required by GCR 1963, 738.2(3).

On this basis the answer to the second question on the first issue must likewise be in the negative whereby the writs of garnishment would fail and be dismissed.

(C) *Does the law of this state that only the garnishee defendant can attack the issuance and maintenance of a garnishment thereby preclude the principal defendant from questioning its validity?*

In the court below plaintiff in his argument claimed that the principal defendant in an action does not have the standing to attack the validity of garnishments issued in the cause and placed reliance upon the provisions of GCR 1963, 738.14, 738.15 and 738.16. GCR 738.14 permits the principal defendant to file a bond and to thereby terminate the garnishment, and GCR 738.16 gives the court discretion, before judgment, to dissolve a garnishment without the bond described in the two preceding sections. In none of these sections is there any authority whatever for the position taken by the plaintiff.

There is no merit whatever to the plaintiff's position with reference to this third question on the first issue and we are of the opinion that the defendants would be entitled by the elementary dictates of justice to a legal remedy for the wrongful garnishment of their property in an unlawful fashion by the plaintiff.

By reason of the foregoing we are led to the conclusion that this question must also be answered in the negative.

(D) *Is a claim made against these corporate defendants which could be satisfied by funds held in the hands of a garnishee defendant?*

We refer to the previously cited statute, MCLA 600.4011; MSA 27A.4011, and GCR 1963, 738.2(1) and 738.2(3) in the consideration of this fourth question. These all require that a claim be made against a defendant before garnishment can issue against the assets of such defendant. The only relief sought against the corporate defendants upon final judgment is to be found in the prayer of Count I paragraph F of the complaint which prays:

"F. That the Northtown Transit Mix, Inc., Northtown Transit Mix & Supply Co., Inc., Western Aggregate Haulers, Inc., Michigan Concrete Pumping, Co, Inc. and Normandy Trucking Company Inc., be dissolved, and the proceeds distributed to plaintiff".

This claim against the corporate defendants certainly does not provide such an obligation as is envisioned by the statute and the court rules to allow plaintiff to garnishee the funds of these corporate defendants since the garnishment would have to be dismissed even if all of the prayers against the corporate defendants were granted to the plaintiff upon a trial on the merits.

For the reasons set forth the answer to the fourth question on the first issue must likewise be in the negative.

On this entire issue of garnishments we are forced to the conclusion that plaintiff's position is wholly without merit.

These corporate defendants are not participants in the legal debate between the plaintiff and those against whom he seeks relief. The plaintiff does in fact purport to act on behalf of these corporate defendants, claiming to be acting for their benefit. By the garnishment he has threatened them with irreparable loss by preventing their continuance of their businesses, having tied up their available funds. Plaintiff in the court below argued that the motion to dismiss the garnishments should not be heard until after disclosures had been filed. We find that the dismissal of the garnishments upon the assets and the accounts of the corporate defendants as made by the trial court at the outset of this matter was proper.

II. *Was the action of the trial court proper in setting aside a default claimed by the plaintiff for the failure of the defendants to answer when no order had been entered at the time default was filed on the question of two pending motions to dismiss?*

For purposes of disposition of this question we must set forth the chronology of the events as shown by the court calendar to indicate the steps taken by the several parties. We find the pertinent entries as follows:

March 26, 1968    Complaint filed by plaintiff.

April 8, 1968    Rule 116 motion to dismiss filed by defendant Brown.

| April 15, 1968 | Answer to complaint filed by defendant Wagner. |
| April 16, 1968 | Answer to motion to dismiss with accompanying brief of law in support thereof [filed by plaintiff in response to defendant's April 8th motion]. |
| April 19, 1968 | Motion to dismiss heard by the court. Denied orally by the court but no formal order entered. |
| April 30, 1968 | (a) Motion for entry of order denying motion for dismissal. (b) Proposed order denying motion to dismiss. Filed by plaintiff *but not signed by court*.[1] |
| May 15, 1968 | Default against defendant Brown and corporate defendants filed by plaintiff.[2] |
| May 23, 1968 | (a) Notice of application for judgment of default with supporting affidavit. (b) Motion for default judgment filed by plaintiff against defendant Brown and corporate defendants. |

[1] No notice of presentment of the proposed order is disclosed by the file, nor is proof of service of the motion for entry of the order, nor praecipe to place the same on the calendar for hearing by the court. Evidently plaintiff filed his motion and proposed order and then did nothing to complete its formal entry.

[2] In his affidavit of default plaintiff states: (a) that defendants were given notice of denial of their motion to dismiss on April 19, 1968 upon the hearing of said motion before Judge Ziem at the conclusion of the hearing, and (b) that more than 20 days have elapsed since the notice of denial of defendants' motion to dismiss was given them [April 19th] and they have failed to file any answer, pursuant to GCR 108.3(1) and this default is entered pursuant to GCR 520, and the time to answer has not been extended.

| | |
|---|---|
| May 27, 1968 | Answer to motion for default judgment filed by corporate defendants. |
| May 27, 1968 | Motion to set aside default and strike pleadings with supporting affidavit filed by corporate defendants. |
| May 29, 1968 | Motion for default judgment denied orally by court [See filing May 23rd] |
| May 31, 1968 | (a) Order denying Rule 116 motion to dismiss [See oral ruling April 19th]. [Stamped received by the court clerk *but not signed by the court.]* |
| May 31, 1968 | (b) Order *re* motion to dismiss or alternative relief filed by defendant Brown. [Stamped received by court clerk *but not signed by the court.]* |
| June 5, 1968 | Notice and claim of appeal of denial of May 29, 1968 of plaintiff's motion for default judgment filed by plaintiff. |
| June 12, 1968 | (a) Order *re* motion to dismiss or alternative relief signed and filed by the court. (b) Order denying Rule 116 motion to dismiss signed and filed by the court. (c) Order denying motion for default judgment signed and filed by the court. [To implement oral rulings of the court on April 19th and May 29th. |

|                  | Orders prepared by counsel for defendant Brown]. |
|------------------|--------------------------------------------------|
| June 20, 1968    | Supplemental motion to dismiss or alternative relief (renewal of motion of May 10th and court order denying such on June 12th) filed by defendant Brown. |
| June 26, 1968    | Answer to motion to set aside default [see May 27th] filed by Plaintiff. [No reasons given for opposition to such motion.] |
| June 26, 1968    | Hearing on motion to set aside default. Granted orally by court. |
| July 1, 1968     | Motion to strike orders entered on June 12, 1968.[3] |
| July 3, 1968     | Order setting aside default of all defaulted defendants signed and filed by the court [see June 26th—order prepared by corporate defendants]. |
| July 3, 1968     | Order extending time for filing of answer signed and filed by the court [order prepared by corporate defendants]. |
| July 3, 1968     | Answer to supplemental motion to dismiss or alternative relief filed by plaintiff. [See June 20th.] |

[3] In this motion plaintiff argues: (a) the supplemental motion of June 20th was really a disguised second motion to dismiss which is not allowed under GCR 116.2; (b) the order denying the rule 116 motion to dismiss was properly entered on record by the clerk pursuant to GCR 522 on April 19th; and (c) that the order signed and filed by the court on June 12, 1968 for the same ruling was redundant, immaterial, *et cetera,* and merely a tactic to prolong the time to answer.

| | |
|---|---|
| July 5, 1968 | Notice of claim of appeal from order setting aside default filed by plaintiff. [See June 26th and July 3rd.] |
| July 10, 1968 | Answer to motion for entry of second order *re:* motion to dismiss or alternative relief filed by plaintiff. |
| July 11, 1968 | Second order *re:* supplemental motion to dismiss or alternative relief signed and filed by the court. [Prepared by defendant Brown.][4] |
| Dec. 18, 1968 | Answer to complaint filed by corporate defendants. |

"An order, to be effective, generally should be reduced to writing and be dated and signed by the judge, but in certain circumstances it may be prepared, signed and entered by the clerk." 1 Callaghan's Michigan Pleading & Practice, (2d Ed), § 19.29, p 618.

Under the old law the rule pertaining to an entry of judgment or order was:

"Whenever an order has been granted in any proceeding it shall be noticed and presented for signature within 10 days after the granting of the same. If such order is not so presented or time extended by the court, it will be considered as abandoned, and a new application for such order may be made only to the judge granting the original order, or his successor, upon such terms as may appear just and equitable." Court Rule No 10, § 5 (1945); see *McLay v McLay,* 354 Mich 19, 25 (1958).

---

[4] The order states that: (a) plaintiff must be available for discovery on July 16, 1968; (b) if he fails to appear, this default will result in a dismissal of his complaint; and (c) time to answer is extended for 20 days beyond completion of the above-ordered discovery.

But the Michigan Court Rules have been amended to read as follows:

"Except as provided herein and in Rule 520, all judgments and orders shall be dated and signed by the judge upon notice and presentment for signature within 10 days after the granting of the same. The clerk may sign the judgment or order when approved as to form by the attorneys for all the parties. If no judgment or order has been presented for entry within 10 days from the date that the direction of the entry of the judgment or order is given, the clerk shall prepare, sign and enter the judgment or order in accordance with the direction of the court and in accordance with its terms." GCR 1963, 522.1.

"All judgments or orders signed by the clerk or judge in accordance with these rules shall be noted on the docket. *The date of signing an order or judgment shall be the date of entry thereof.* The notation of the judgment or order on the docket shall be brief but shall show the nature of the order or judgment of the court. The signing or entry shall not be delayed for the taxing of costs." GCR 1963, 522.2. (Emphasis added.)

Extensive discussion follows GCR 1963, 522. The Committee Comments states:

"This rule is written to provide a standard simple method for the preparation, signing and entry of judgments and orders. Flexibility is provided initially. Obligation is placed upon the judge to designate how orders and judgments should be entered. In the instance where the judge directs that the judgment or order is to be entered by the clerk in accordance with the terms specified in the direction, initial responsibility is placed upon the lawyers to prepare and approve the form of the order or judgment and residual responsibility is placed upon the clerk to follow the direction of the court." 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 6.

Further analysis is found in the authors' comments:

"The term 'order' includes every official direction of the court requiring action to be taken in a case, except, of course, those orders given orally in open court in directing the trial, conduct of witnesses, exclusion of evidence, *etc.* * * * But otherwise, every order of the court must be dated and signed by the judge." 3 Honigman & Hawkins, *supra,* p 7.

"Though slightly stricter than former practice, the purpose of the rule is to assure that every judgment and order substantially affecting the rights of the parties shall be recorded in precise and authoritative form." 3 Honigman & Hawkins, *supra,* p 8.

"Sub-rule 522.1 provides a flexible machinery for the mechanics of getting the judgment or order into final form and having it signed. The judge may dictate the form of order and direct it to be prepared and presented for his signature either by the clerk or by the prevailing party. More typically, the judge will announce his judgment or order or dictate or file an opinion stating his decision and direct the prevailing party to prepare the form of judgment or order and present it to the judge for his signature upon notice to the other side." 3 Honigman & Hawkins, *supra,* p 8.

Further support for the proposition that the court speaks through its written orders, not through its verbal decisions, is in *Hartman v Roberts-Walby Enterprises, Inc,* 380 Mich 105 (1968). In fact, Justice SOURIS specifically states in his concurring opinion on page 113:

"From a review of this record it is apparent that the Court of Appeals determined that the claim of appeal of the defendant was not timely filed by computing the time allowed for filing claims of appeal, not from the date of *entry* of the order appealed from or the order denying rehearing but, rather, from the dates the circuit judge's decisions thereon were announced from the bench. The timeliness of an appeal filed pursuant to

subrule 803.1 is determined by reference to the dates of *entry* of judgments and orders, which subrule 522.2 defines as the date of signing thereof, and not from the date decision thereof is announced from the bench."

Turning to the events that transpired in this case, we see that the defendants filed a motion to dismiss[5] under GCR 1963, 116.1(2). Under GCR 1963, 108.3(1), upon a motion to dismiss, the time for filing an answer is suspended.

More specifically, the latter rule states:

"When a motion or amendment is filed, the time for pleading described in subrule 108.1 is altered as follows, unless a different time is fixed by the court:

"(1) If a motion to dismiss or a motion for summary judgment is denied, the moving party shall serve and file his responsive pleading within 20 days *after notice of the denial* but if the moving party shall, within 20 days, file application for leave to appeal *from the order,* the time shall, in the absence of contrary order of the Supreme Court, be extended until 20 days after the denial of the application;" (emphasis added).

Upon a close reading of the above rule, we can see that a defendant must file his answer within 20 days "after notice of the denial" of his motion to dismiss. But, what interpretation must be given "after notice of the denial"?

Returning to the rule, we can further see that the rule itself answers the interpretation problem. It equates "after notice of the denial" with "the order", thus defining "after notice of the denial" as an "order". Furthermore, by GCR 1963, 522.1, we know that all judgments and orders must be

---

[5] This motion should have been correctly labelled "accelerated judgment". However, "[i]f a motion to dismiss is filed under this rule [GCR 116], incorrectly labelled, it should nonetheless be considered by the court as if correctly labelled, absent any prejudice to the opposite party". 1 Honigman & Hawkins, Michigan Court Rules Annotated (2d Ed), p 337.

signed and dated either by the judge or, if appropriate, his clerk. And finally, GCR 1963, 522.2 tells us that the date of signing an order or judgment shall be the date of entry thereof.

Therefore, in this case, under the above analysis defendant did not have to submit an answer to the plaintiff's complaint until the order denying the motion to dismiss was signed. Thereafter, defendant had 20 days in which to so respond.

Even before the present 1963 Court Rules were adopted, the courts agreed with the above reasoning and conclusion. Under the 1945 Court Rules, a defendant only had 15 days within which to file a general appearance and plead after a special motion had been denied. The courts interpreted this as 15 days after the order denying the specific motion *had been filed.* Specifically, in *Reaume & Silloway, Inc v Tetzlaff,* 315 Mich 95, 101 (1946), the Court states:

"The order denying the motion to quash is affirmed. Defendants shall have 15 days after this opinion is *filed* within which to plead to or answer plaintiff's declaration." (Emphasis added.)

The *Reaume* rationale and conclusion were adopted later in *Shank v Castle,* 357 Mich 290 (1959).

From this analogy of the rules and cases, it readily appears when the same are applied to the instant case the order denying motion to dismiss was not in effect until the formal order was signed by the court on June 12, 1968. The signing of this order constituted the notice of denial to the defendants and from this date forward the time to answer began to run but again it was stayed by virtue of the plaintiff's motion to strike the order of June 12, 1968, and the subsequent order of the

court extending the time to answer for 20 days beyond the completion of discovery. Consequently, under this analysis the factual allegations contained in the plaintiff's affidavit of default in support of his order of default are fatally defective in that they have no foundation in the record and as a result the order of default falls as improvidently taken.

Once we have determined that the order of default fails because of a defective affidavit of default all subsequent actions which rely for support upon such order of default likewise fail. This specifically applies to the plaintiff's motion for default judgment filed on May 23, 1968. We then must conclude that the trial court was correct in its determination in setting aside the default of the defendants and denying the motion for default judgment. There are no mental acrobatics by which the plaintiff could shift the burden to the defendants requiring any affidavit of merit or accompanying of the motion to set aside default with a sworn answer or any other technical requirement since the plaintiff's order of default was fatally defective and void from its very beginning. Thus, we conclude that the trial court committed no error in setting aside the order of default and in denying the motion for a default judgment.

We do not see any merit in the plaintiff's contention that it was error for the court to set aside default as to all of the defendants when only a portion of them had asked for the relief in question. Since the plaintiff's order of default was fatally defective *ab initio* it would be requiring an exercise in futility to ask the court not to set aside the default with respect to those defendants who were not moving parties since they would be entitled to have such fatally defective default set aside

within any reasonable time after they received notice of its fatal defect. The court's action in this circumstance was proper since it saved the court the necessity of hearing another motion on the same issues which could only be decided in the same fashion and would only serve to consume the time of the court unnecessarily and to delay the orderly processing of this action.

III. *Was the plaintiff entitled to the appointment of a receiver when the court found that on the basis of the allegations before it, it could not properly exercise its discretion on the application for receiver without taking testimony pertaining to the merits of the cause?*

The wisdom of the trial court in refusing to grant the appointment of a receiver prior to the trial of this cause and without a hearing has been clearly established by the fact that at trial plaintiff was unable to sustain the burden of proof on the allegations made by him as to every conceivable breach of fiduciary obligation by the corporate officers and directors. Plaintiff relies on MCLA 600.3505; MSA 27A.3505 for the appointment of a receiver in his case. The statute cited by the plaintiff deals with voluntary dissolutions of corporations. The requested dissolution in the instant case is far from voluntary but then the plaintiff's citation of this inapplicable authority is consistent with the conduct of this entire proceeding.

Plaintiff was accorded an opportunity by the trial court to have the matter set for hearing and taking of testimony in connection with his application for appointment of a receiver. His attorney was told to obtain a date for such hearing from the court administrator, but he declined to do so as shown by the record. He again sought the appoint-

ment of a receiver without the taking of testimony on Wednesday, September 11, 1968. We are informed from the briefs and records in this cause that, in the Oakland County circuit, Wednesday is the day set aside for handling of miscellaneous matters but not for taking of testimony in contested matters. The court once more indicated that he would not appoint a receiver until such time as a hearing had been held in order to enable him to make findings of fact that were relevant and necessary to exercise of the court's discretion in determining the issue of the necessity of appointment of a receiver.

"We recognize the general rule that in the absence of fraud, breach of trust or abuse of discretionary powers, courts will not ordinarily, on the application of minority stockholders, interfere with the management of the business and affairs of a corporation." *Rytkonen v Butler,* 305 Mich 580, 593 (1943).

"Nothing short of a showing of necessity because of some peculiar circumstances will justify the appointment of a receiver for a going, solvent corporation." *Miller v Youmans-Burke Oil & Gas Co,* 278 Mich 647, 664 (1937).

" * * * [W]hile the court has power, it will not infringe upon the discretion vested in corporate officers, and in any instance is loath to act unless it is clearly made to appear that the discretion is, in bad faith, abused." *Morehead Manfg Co v Washtenaw Circuit Judge,* 254 Mich 697, 700 (1931).

The authorities cited above indicate that the appointment of a receiver is a harsh remedy which is not to be undertaken until a full hearing is had to determine the facts of the case and then such appointment is to be made only in the face of strong evidence. The plaintiff is in a difficult position as an employee, director and officer of the several corporations, since he is chargeable with

the knowledge of those things which he knew, or should have known by diligent inquiry. *Barrows v J N Fauver Co,* 280 Mich 553 (1937). For this reason we are constrained to doubt his sincerity in claiming the existence of matters of an emergency nature which require the drastic solution of the appointment of a receiver; especially in light of the fact that the terms of the loan, which Northtown Transit Mix, Inc, had taken from the bank under guarantee from the Small Business Administration, had provision for the acceleration of the balance of the loan in the event a receiver was appointed or obligations of the corporation were in default. This certainly would not be of any service to the corporation or its shareholders but would in all probability work an irreparable injustice upon the shareholders under the showing made by the plaintiff in his application for the appointment of a receiver on the several instances where he called his application to the attention of the court. Further, we find that the question having been determined against the plaintiff in a trial on the merits that the issue is now moot and there was no error on the part of the trial court in denying the application for receivership during the pendency of the action.

IV. *Was the plaintiff prejudiced by denial of his motion to add a party defendant on the day of trial?*

One John N. O'Brien, secretary of at least one of the defendant corporations, was not originally named as a defendant in these proceedings. The plaintiff did, however, during the course of the maneuvers preceding trial, file a motion to add said John N. O'Brien as a party defendant. Plaintiff, however, never noticed such motion for hear-

ing until the day of trial and sought to have the motion to add party defendant heard on the date set for trial as shown by the trial transcript. He also had two other motions that had not previously been disposed of because of his failure to notice the same for hearing. At the pretrial conference, it had been ordered that all motions had to be filed and noticed for hearing by January 8, 1969, sometime prior to the trial date.

The motion had been part of the court file from April 16, 1968, a period of some nine months prior to trial, without any effort on the part of the plaintiff to bring it on for hearing. Further, the trial court found on the basis of the plaintiff's proofs that the said John O'Brien had served the corporation faithfully and properly. Even without the latter factor we would be of the opinion that the motion for addition of party defendant on day of trial was properly denied under the circumstances of this case where plaintiff slept on his rights to bring the motion on for hearing for approximately nine months.

V.   *Was plaintiff entitled to a jury trial when demand was made after the pretrial and after a filing of a waiver thereof when the subject matter of the litigation was a shareholder's action for an accounting to the corporation?*

In his pretrial statement plaintiff indicated that he intended to try the case without a jury. No jury trial demand was filed by plaintiff prior to the pretrial. There is some question in one's mind as to the motivation in making demand for jury trial at such a late stage of the proceedings as the trial date. The request was not timely made and the court properly denied request for jury trial. GCR 1963, 508.2(1). All of the claims made by the

plaintiff are in the nature of an accounting or reformation, dissolution, or otherwise, and all appeared to be in the nature of chancery matters in which normally a jury would not function. *Haylor v Grigg-Hanna Lumber & Box Co,* 287 Mich 127 (1938). Consequently, under the facts of this case we see no error in the denial of the demand for jury trial.

VI. *Was the plaintiff prejudiced by the failure of the trial court to send him a copy of the pretrial summary when he admitted that he was not harmed thereby?*

Plaintiff complains that he did not receive prior to trial date a pretrial summary from the trial court judge. An examination of the court files and records, especially the court docket, indicates that most of the delay in the setting of a pretrial date stemmed from the plaintiff's failure or refusal to appear time and again at the taking of his deposition as properly noticed by the opposite side. The pretrial was adjourned by stipulation of all parties to a new date scheduled by the assignment clerk after the cause was at issue. One of the reasons for speeding up the trial of this matter was the necessity of taking of proofs to give the court a basis for the exercise of its discretion in determining plaintiff's eligibility for much of the relief he sought in his complaint. In fact, plaintiff agreed with other parties present at a hearing on November 27, 1968, that the cause should be advanced for immediate pretrial and thereafter immediate trial because the court had indicated that it would not appoint a temporary receiver without a testimonial hearing.

Again, when the pretrial date rolled around on December 20, 1968, plaintiff was represented at

the pretrial but did not file his pretrial statement as it was not prepared. With the consent of the court and opposing counsel, plaintiff was given an opportunity to complete his pretrial summary and mail it to the court and all parties concerned. At the pretrial it was agreed that all discovery would be completed by January 20, 1969. In his belatedly filed pretrial, plaintiff indicated that he would not call any expert witnesses.

During course of trial, plaintiff complained that he wished to call expert witnesses but was told by the court that he would be precluded from same since his pretrial statement indicated that he would call no expert witnesses. However, during the course of the colloquy between the court and counsel regarding this facet of the case, the court became aware of the fact that through some happenstance no formal pretrial summary was prepared but rather the court's rough notes were filed in the court file as a pretrial statement. At that point the court not only agreed to allow plaintiff to call an expert witness but also allowed him an amendment to the pleadings to remedy some defects therein. The plaintiff was present through his representative at the pretrial conference and admitted in open court at the trial when this matter was under discussion that plaintiff's interests had not been injured in any fashion by his failure to receive a pretrial summary.

Under these circumstances we see no prejudicial or reversible error because of the court's failure to furnish a pretrial summary especially in light of the delaying conduct on the part of the plaintiff and the agreed need for speedy disposition of this cause and its advancement on the calendar for such purpose.

VII. *Can a shareholder, familiar with the day-to-day affairs of the corporation, bring an action for claimed wrongs to the corporation occurring more than two years prior to the institution of the action?*

At the outset of the trial, the court ruled that the proofs would be limited to a two-year period prior to the commencement of this suit on the theory that MCLA 450.47; MSA 21.47 limits the time within which an action can be brought against the directors and officers of a corporation for alleged misconduct to a two-year period under certain circumstances.

Plaintiff was familiar with the business and close to the affairs of the corporation. Consequently, he is chargeable with knowledge of such claimed irregularities. *Goodspeed v Goodspeed,* 273 Mich 87 (1935). Plaintiff now claims that because of this ruling he was prevented from introduction of certain documents referred to as the "SBA [Small Business Administration] Agreement". The trial transcript indicates, however, that these documents were a portion of the corporate minute book and contained documents representing the entire transaction. In his brief on this point, the plaintiff again makes accusations of wrongdoing as he did in his complaint and in each instance the proofs have shown that the plaintiff's allegations were without any basis in fact.

In applying the cited statute the Supreme Court said in *Goodspeed, supra:*

"During the years of corporate management now complained of plaintiff was in a position to have full information relative to the acts now sought to be brought to court review, and must be held chargeable with knowledge thereof.

"It is, therefore, contended by the defendants, that the subject matter is stale and plaintiff is barred by laches and the statute of limitations contained in the Michigan General Corporation Act [1931 PA 327, § 47].

"The remedy plaintiff now seeks was available as each occasion for complaint arose and correction should have been seasonably sought."

Later in the opinion the court further states:

"Plaintiff either knew or, at least, under the evidence, is chargeable with concurrent knowledge of all acts now complained of, and he waited more than two years after the effective date of the mentioned statute of limitations to bring this suit at bar."

We see no error in the court limiting the proofs to a two-year period prior to the initiation of this action by the filing of a complaint. It is to be noted that allegations regarding activities subsequent to the judgment are not relevant to this appeal.

VIII. *Taking the evidence in the light most favorable to the plaintiff, did it state a cause of action against Contemporary Builders, Conrad Wagner or Carole Wagner?*

Plaintiff, during the course of the trial and in his argument, made complaint of the absence of the defendant Wagner from the trial. He did not subpoena that defendant as a witness nor had he made any arrangements or secured a commitment from counsel to guarantee the attendance of said defendant for the taking of testimony. Plaintiff cannot now speculate by way of allegations in his brief on appeal as to what could have been proven had Wagner been present in court for trial. It was his duty to assure the attendance of any witnesses, including defendant Wagner, whom he wanted to call as witnesses at the trial. Not the trial judge

nor any other person had any duty to prepare and present the plaintiff's case. That obligation was solely his. His proofs failed to sustain the burden of proof of a cause of action against the named defendants in this issue. Consequently, there was no error on the part of the trial judge in dismissing as to those defendants for lack of evidence.

IX. *Did the court comply with the provisions of court rules as to findings of fact in its opinion?*

Plaintiff contends that the judgment of June 11, 1969, was entered without any findings by the trial court, contrary to the provisions of GCR 1963, 517. Again, despite a very deliberate and extensive search we are unable to find anything that would enable us to agree with the plaintiff's allegation.

Originally the court did make provision in its opinion as to the findings and the testimony in the trial that was intended to enjoin any contracts between the corporations and any one of their directors or shareholders without 100% shareholder approval of such contracts. However, it was called to the court's attention that this was an attempt by court order to restrain anticipated damage. The court's attention was called to the following language in *Fenestra Inc v Gulf American Land Corp,* 377 Mich 565, 601–602 (1966):

"In the first instance, insofar as the remedy of injunction is concerned, the law of this State is well-settled that the mere apprehension of future injury or damage cannot be the basis for the issuance of the writ."

The court, when it recognized that its original opinion proposed to do something that would in fact be contrary to the law, modified its opinion with respect to the injunctive relief provided in

the original opinion. It appears from the briefs that a modified opinion was set forth on the record in open court even though no transcript of such hearing has been filed on appeal. An examination of the statements concerning such modified opinion and the judgment as entered leads us to the conclusion that none of the rights of any of the parties were imperiled in any fashion and the parties were not prejudiced by such modification of the opinion and consequently there is no reversible error. The judgment is well founded in the opinion of the court as we understand it from the briefs and records in this cause.

X. *Were the findings of fact made by the trial court consistent with the proofs submitted at trial and did the trial court properly refuse to dissolve Northtown Transit Mix and Normandy Trucking, Inc?*

Plaintiff again makes many allegations and argues about the fact of the allegations. He must however take notice that the burden of proof must be borne by the one who makes the charges. Allegations of fraud are lightly made but are not lightly taken and must be proven by a preponderance of the evidence. The plaintiff would do well to review the law on burden of proof, the admissibility of evidence and the distinction between allegations and proofs.

Plaintiff maintains on appeal that the trial court's findings of fact are not supported by the evidence. This Court does not, of course, set aside factual determinations by lower courts sitting as trier of fact unless they are clearly erroneous. GCR 1963, 517.1. After a thorough review of the record below, we are unable to hold that the trial

court clearly erred in arriving at the facts of the case. *Sattiewhite v De La Cuadra,* 31 Mich App 117 (1971).

In this case we have to go one better. We find that, under the proofs as presented, the trial court absolutely could not give the plaintiff another ounce of relief over and above that already granted to him. In making our determination, we are not unmindful of the plaintiff's posture of being the friend and helpmate of the several corporations in which he was a stockholder, officer and director, when in fact his motion filed with all of the creditors of the corporations in effect put the creditors on notice to stop extension of credit to any of the defendant corporations. This could have very effectively put all of the corporations completely out of business and in all probability did have some serious ulterior effects on the well-being and the business prospects of the several corporations. The fact that such motions were filed concurrently with the filing of the complaint and yet one year later at the conclusion of the trial had never been noticed for hearing by the plaintiff places a great strain on the credence one can give to the truthfulness and accuracy of the plaintiff's position throughout these proceedings.

Affirmed. Costs to the defendants.

All concurred.